Filed 3/16/15  In re Dulce S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re DULCE S. et al., Persons Coming Under the Juvenile Court Law. | B258814 |
|  | (Los Angeles County Super. Ct. No. DK05340) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>PEDRO S.,<br><br>　　　Defendant and Appellant. |  |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Timothy Saito, Judge.  Affirmed.

　　　Pamela Deavours, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Dulce S. and Angel S. were declared dependents of the juvenile court based on sustained allegations of domestic violence between their parents, Pedro S. and Laura S., as well as domestic violence between Laura and the children's adult sibling. Dulce and Angel were released to Laura under the supervision of the Los Angeles County Department of Children and Family Services (Department) but removed from Pedro's care and custody. Pedro appeals that disposition order, contending there was insufficient evidence of a substantial risk of harm to the children if he was allowed to return to the family home and reasonable means existed to protect the children while in his custody. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Family's Prior Involvement with the Department*

The family consists of Laura, Pedro and their children, Dulce (born in 2004) and Angel (born in 2013). Pedro also had a child from a previous relationship, Peter S., who is now an adult. Peter lived with Laura and Pedro when he was a child.

The family first came to the attention of the Department in 2007 when the Department received a referral alleging Laura had physically abused Peter, then a minor, and that the abuse created a risk of harm to Dulce. During the investigation Peter admitted he had thrown a chair at Laura. Peter claimed Laura had struck him with her hand. The referral was closed as unfounded.

In April 2008 another referral was received alleging Pedro had slapped Laura, injuring her face. Pedro was arrested for spousal abuse. Allegations of substantial risk of emotional abuse were substantiated.

In May 2008 the family, which had moved to San Diego County, was offered voluntary services by that county's child protection agency. In June 2008 the services were discontinued because the family refused to participate. After their return to Los Angeles, there were additional referrals. Although some were determined to be unfounded, allegations of emotional abuse by Pedro were substantiated; the case was closed when the situation stabilized.

## 2. *The Current Dependency Proceedings*

### a. *The May 22 and 31, 2014 incidents*

On May 31, 2014 the Department received a referral for an immediate response to assess the children's safety. Laura told the social worker she had borrowed Peter's car on May 22, 2014. When she returned home, Peter was angry she had taken it without his permission. According to Laura, the argument escalated; and Peter became physically and verbally abusive. Peter started pushing her, and she asked him to leave. Laura reported that Pedro was present during the incident and Dulce had to call for an ambulance afterward because Laura felt ill.

Laura also told the social worker Pedro appeared upset and did not respond to her request for rent money when he came home from work on May 31, 2014. Later that evening, when Laura again asked for money for rent and food, Pedro screamed at her. Laura believed Pedro was going to strike her: He grabbed her arms "very hard," trying to knock her down. Laura bit Pedro to protect herself. Dulce had witnessed the confrontation and intervened to protect Laura, attempting to pull Pedro off by his hair. Laura showed the social worker two bruises on her arms and one on her leg she said Pedro had caused.

Following this altercation, Laura went to the grocery store; Pedro and Peter followed her. She claimed Peter had assaulted her, explaining she believed he was going to run her over with his car. Laura called the police. When they arrived, they served her with a restraining order obtained by Peter, who had alleged Laura chased him with a knife during their dispute on May 22, 2014. That restraining order was subsequently dismissed.

Laura told the social worker she had called the police on several occasions during her marriage because Pedro had been physically and verbally abusive. She stayed with Pedro because he threatened her with deportation and would manipulate her and convince her to change her story. Laura had decided she could no longer tolerate Pedro's abuse and requested a protective order.

3

Dulce was interviewed about the May 31, 2014 incident. Dulce stated she had heard her parents arguing and saw Pedro grab Laura by the arms and try to knock her down. Dulce also said she had asked Pedro to leave, but he would not go. Dulce said she pulled Pedro by the hair to defend her mother. When asked if she had seen Pedro strike Laura before, Dulce responded that she had but could not remember exactly when that had occurred. Dulce also reported that Pedro was verbally abusive to Laura, particularly after he had been drinking alcohol. Dulce told the social worker, "I am only safe at home with mom. I am afraid of my dad because he hit my mom."

The social worker conducted a telephone interview with Peter, who was then stationed with the Navy in Japan. Peter explained he and Laura had argued on May 22, 2014 because he had asked her not to take his car without permission. He claimed Laura had chased him with a knife. Peter believed Laura was a violent and manipulative person; he thought she was "bipolar." Peter denied he had hit Laura and also denied that Pedro abused her. He insisted Laura inflicted bruises on herself.

b. *The section 300 petition*

On June 4, 2014 the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (substantial risk of serious physical harm inflicted nonaccidentally) and (b) (substantial risk of serious physical harm due to the parents failure to protect),[1] on behalf of Dulce and Angel. The petition alleged, (1) Pedro and Laura had engaged in violent altercations in front of the children; (2) Laura had engaged in a violent altercation with Peter; and (3) Pedro had a history of substance abuse and was a current abuser of alcohol, which rendered him incapable of providing appropriate care for the children. The Department stated Dulce and Angel were at high risk for future abuse or neglect due to Pedro's conduct and reported they had been temporarily removed from his care and custody. The Department recommended that the children be released to Laura and that Pedro's visits be monitored in a neutral setting.

---

[1]     Statutory references are to this code.

At the initial detention hearing the court ordered the children detained from Pedro and released to Laura. The court also granted a temporary restraining order against Pedro on behalf of Laura and the children.

c. *The jurisdiction/disposition report*

Dulce was interviewed again about the May 31, 2014 incident for the jurisdiction/disposition report prepared by the Department. Dulce stated, "I was sleeping and heard my parents arguing. I got up and saw my mom and dad on the floor[;] my dad was on top of my mom trying to bite her arms[,] so I pulled his hair to get him off of her. I had never seen my dad do that to my mom before." In this interview Dulce said she had never seen Pedro strike Laura before and denied seeing Laura bite Pedro. Dulce said she missed Pedro and was not afraid of him.

Dulce also said that on May 31, 2014 she and Laura saw Peter at the market. Peter yelled at them and said he was going to run them over with his car. Dulce did not believe Peter was actually trying to run them over. She thought he wanted to frighten them. Dulce said Pedro did not currently consume alcohol, but had in the past.

When Laura was interviewed for the jurisdiction/disposition report, she denied that Pedro physically abused her or that she and Pedro were violent toward each other. Specifically with regard to the May 31, 2014 incident, Laura said she and Pedro had been arguing and he grabbed her arms to calm her down. She said they slipped and lost their balance, and then Dulce pulled Pedro's hair. Laura claimed she had sought a restraining order only because the social worker told her the children would be taken away if she did not. She reported Pedro had stopped drinking when she found out she was pregnant with Dulce. Laura wanted Pedro to return home and believed they could work out their issues.

According to Pedro, on May 31, 2014 he and Laura had argued about money. Laura was "coming at" him, and he grabbed her arms to keep her away. He also said Laura was biting him, and Dulce pulled his hair, which ended the struggle. He denied he had previously struck Laura. Pedro said Laura had a history of fabricating claims against him. Pedro conceded, however, that he and Laura had difficulty communicating, "but we

5

get along well[;] there is no need to blame either one of violence. This situation only happened once."

Peter was reinterviewed and again stated Pedro was never violent with Laura. According to Peter, Pedro was a passive and quiet man who did not communicate well. He said Laura lied about everything and described her as aggressive and mentally unstable.

The social worker believed Laura and Pedro's inability to interact appropriately created a substantial risk of physical harm to Dulce and Angel. Accordingly, the Department recommended the court sustain the allegations regarding domestic violence, but conceded Pedro did not abuse alcohol. It recommended that Dulce and Angel remain in Laura's care, where they appeared to be safe, as long as she continued to attend her treatment programs and ensured that Dulce remain in individual counseling. The Department also recommended that Laura be provided family maintenance services, Pedro given family reunification services, and Pedro's visits with the children be monitored.

### d. *The jurisdiction and disposition hearings*

On July 17, 2014 the parents entered no contest pleas, and the court sustained the section 300 petition as amended.[2] The court then addressed disposition.

---

[2]     The amended section 300 petition, as sustained, alleged: "[a-2 and b-2:] On 05/22/2014, the children Dulce S[.] and Angel S[.]'s mother Laura S[.] engaged in a violent altercation with the children's adult sibling Peter S[.] in which the adult sibling pushed [Laura]. On 05/31/2014, the adult sibling attempted to strike [Laura] with the adult sibling's vehicle. Such violent conduct on the part of the adult sibling endangers the children's physical health and safety, and places the children at risk of physical harm, damage and danger.

"[b-1:] The children Dulce S[.] and Angel S[.]'s mother, Laura S[.], and the father, Pedro S[.], engaged in a physical altercation in the presence of the child, Dulce. On 05/31/2014, the father attempted to de-escalate a heated argument between [Laura] and father when father grabbed [Laura]'s arms. The child Dulce intervened to keep the father off [Laura]. On 05/31/2014, [Laura] bit the father. Such conduct on the part of the parents places the children at risk of physical harm."

At Pedro's request the court received into evidence a letter from Centro de Desarrollo Familiar stating he had enrolled in parenting classes on June 30, 2014. Pedro asked the court to enter a home-of-parents order, releasing Dulce and Angel to both Laura and him under the supervision of the Department. He argued he was a calming, stabilizing force in the family and emphasized that everyone who was involved had confirmed the May 31 incident was unique; nothing like it had happened before.

Laura joined Pedro's request and said she had no desire to proceed with the request for a restraining order. Dulce and Angel's attorney also requested a home-of-parents order.

The Department, in contrast, argued that domestic violence had occurred within the family; whether or not Pedro was the aggressor, the family needed to address their issues through treatment. The Department suggested the court could consider Pedro's return to the family home at a subsequent progress hearing.

The court declared Dulce and Angel dependents of the court and found, by clear and convincing evidence, there was substantial risk of physical harm to the children if returned to Pedro's custody: "[B]ased on the current situation, father's previous arrests, patterns, the stressors that have been indicated due to finances and the family relationship as well as this being somewhat of a serious incident involving [Laura] and father, biting[,] the child['s] interceding in the incident, the altercation, . . . [the] father's enrollment [in the parenting course] is a good start. He did enroll on 6/30. But . . . I believe with a little more progress based on my reading of the circumstances, the family dynamics, the child feeling safe around the father, that my inclination is to probably return."

The court ordered Pedro to participate in drug/alcohol testing and to participate in a drug/alcohol treatment program if he tested positive. He was also ordered to attend a domestic violence program for victims, parenting classes and individual counseling to

address case issues and was allowed unmonitored visits outside the family home. The court set a progress hearing for August 21, 2014.[3]

**DISCUSSION**

1. *Governing Law*

Section 361, subdivision (c)(1), authorizes removal of a child from his or her parent's custody only if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and "there are no reasonable means by which the [child]'s physical health can be protected without removing" the child from his or her parent's custody. "'A removal order is proper if based on proof of a parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent.'" (*In re A.S.* (2011) 202 Cal.App.4th 237, 247.) Jurisdiction findings are prima facie evidence the child cannot safely remain in the custody of the parent. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) "The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate." (*Ibid.*) "'"The focus of the statute is on averting harm to the child."'" (*In re A.S.,* at p. 247.) "'The court may consider a parent's past conduct as well as present circumstances.'" (*Ibid.;* see *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216.)

---

[3]  No change in the disposition order was made at the progress hearing. Several months later the court ordered Dulce and Angel detained from Laura after sustaining a supplemental petition under section 387, which alleged Laura had engaged in additional acts of violence against Pedro. At a hearing on March 5, 2015 the court removed the children from Laura's custody, finding the previous disposition had not been effective in protecting them. Both Laura and Pedro were provided with family reunification services. Although we granted the Department's request to take judicial notice of these further proceedings, which underscore the danger of continued domestic violence between Laura and Pedro and the consequent need for ongoing court supervision to protect the children, we do not consider them in evaluating Pedro's challenge to the July 17, 2014 disposition order.

8

Evidence of domestic violence may support jurisdiction findings and removal orders even if the children are not physically harmed as a result of the abuse. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134-137 [although child not physically harmed as a result of domestic violence between the parents, violence between parents while child was present was sufficient to sustain jurisdiction and disposition order removing child from parental custody]; see *In re Heather A.*(1996) 52 Cal.App.4th 183, 195 [removal proper based on father's history of violent relationships with women, which showed that children were at risk of exposure to abuse even if father did not intend children to be harmed].)

We review the juvenile court's disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)[4] Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Christopher R., supra,* 225 Cal.App.4th at p. 1216; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

2. *Substantial Evidence Supports the Juvenile Court's Removal Order*

The aggravated nature of the May 31, 2014 incident between Pedro and Laura combined with the family's history of domestic violence and abuse constitutes sufficient evidence to support the removal of Dulce and Angel from Pedro's custody.

---

[4]      "The burden of proof at the jurisdiction phase in the juvenile court is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence. (§ 355, subd. (a) [jurisdiction findings by preponderance of evidence]; § 361, subd. (c) [disposition findings by clear and convincing evidence].) Nonetheless, we review both jurisdiction findings and the disposition order for substantial evidence. (See *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881 ['The "clear and convincing" standard . . . is for the edification and guidance of the trial court and not a standard for [appellate] review. [Citations.] "'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.'"']; [citations].)" (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1216, fn. 4.)

The May 31, 2014 altercation was serious: Pedro and Laura grappled on the floor, and either Pedro attempted to bite Laura or Laura to bite Pedro or they each attempted to bite the other. Dulce intervened to protect her mother, who suffered bruises on her arms and her leg during the fight. This incident, viewed in the context of the family's pattern of abusive behavior and prior referrals, demonstrates the parents were engaged in an ongoing cycle of domestic violence. Dulce and Angel, although not the targets of the abuse, were at risk as necessary bystanders. Prior, more informal interventions had not resolved the family's issues. Indeed, Pedro and Laura had refused to participate in the services offered. In addition, the parents lacked insight and tended to minimize their conduct as mere communication problems. The characterization of Pedro as a passive, nonviolent individual is belied by the evidence of his prior arrest for domestic abuse and allegations of emotional abuse as described by Dulce.

Pedro's effort to blame the domestic violence exclusively on Laura is similarly unpersuasive. To be sure, Laura also has problems with aggression and violence. In some instances she may have initiated the arguments with Pedro or Peter or, at least, have been an equal participant in the altercations. Those facts, however, do not refute the court's conclusion that removal from Pedro was proper. At most they suggest removal of the children from Laura, as subsequently occurred, might also have been warranted.

The court's additional conclusion there were no reasonable means to protect the children short of their removal from Pedro's custody is also supported by the evidence. Voluntary services had failed in the past because the parents refused to participate, and Pedro had done no more than enroll in a parenting class by the time of the disposition hearing. In particular, Pedro made no attempt to show the juvenile court he was addressing those issues that had likely led to his violent confrontations with Laura. Plainly, separation of Laura and Pedro, rather than releasing the children to both of them, was the only reasonable means to protect Dulce and Angel. (See *In re T.V., supra,* 217 Cal.App.4th at pp. 136-137 [affirming order removing child from father's custody when father had denied responsibility for the violence, claimed that the child's mother

10

was the aggressor, and had not successfully addressed the issues that had led to the domestic violence].)

*In re A.E.* (2014) 228 Cal.App.4th 820, *In re Henry V.* (2004) 119 Cal.App.4th 522 and *In re Hailey T., supra,* 212 Cal.App.4th 139, the cases upon which Pedro relies, do not support his position. Each of those cases involved families with no prior involvement with the dependency system and no history of domestic violence. (See *In re A.E.,* at pp. 826-827; *In re Henry V.,* at p. 530; *In re Hailey T.,* at p 148.) In addition, in *Hailey T.* the parents, who enjoyed a healthy relationship, had enrolled in services early in the dependency process and showed progress in responding to the services. (*In re Hailey T.,* at pp. 147-148.) In *A.E.,* the father took responsibility for his actions, showed remorse and demonstrated a commitment to learning better child-rearing techniques. (*In re A.E.,* at pp. 826-827.)

This case law stands in marked contrast to the situation before us. Pedro has consistently downplayed his conduct and deflected blame elsewhere. He and Laura have an unhealthy relationship, and the children live in an unstable environment where they are at risk of exposure to physical and emotional abuse between their parents. None of the family's prior involvements with the dependency system has resolved the problems. In sum, the court's disposition order was amply supported by the record.

## DISPOSITION

The juvenile court order is affirmed.


PERLUSS, P. J.

We concur:


ZELON, J.                                        FEUER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11